UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> CHARLIE JINAN CHEN, <br>     also known as "Charlie Chen," <br><br> Defendant. | CRIMINAL NO. 18cr 10083 <br><br> VIOLATIONS: <br> Securities Fraud <br> (15 U.S.C. § 78j(b) & 78ff; <br> 17 C.F.R. § 240.10b-5) <br><br> Making a Material False Statement <br> (18 U.S.C. § 1001(a)(2)) <br><br> Aiding and Abetting <br> (18 U.S.C. § 2) <br><br> Criminal Forfeiture Allegation <br> (18 U.S.C. § 981(a)(1)(C) & 28 U.S.C. § 2461(c)) |

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Certain Relevant Persons and Entities

1. The defendant, CHARLIE JINAN CHEN, also known as Charlie Chen ("CHEN"), was an individual who resided in Lexington, Massachusetts. CHEN owned and operated a restaurant in Chelmsford, Massachusetts. CHEN traded securities in his and his spouse's accounts at TD Ameritrade ("TDA") and Fidelity Brokerage Services ("FBS").

2. Vistaprint N.V. was an international printing company headquartered in the Netherlands, with offices formerly based in Lexington, Massachusetts. Vistaprint's shares were securities, as defined in Title 15, United States Code, Section 78c(a)(10), and were registered with

the United States Securities and Exchange Commission ("SEC") pursuant to Section 12(b) of the Securities Exchange Act of 1934 (the "Exchange Act"). The shares were publicly traded on the NASDAQ Stock Market, a national securities exchange, under the ticker symbol "VPRT."

3. Person A was an individual who resided in Lexington, Massachusetts. In or about and between November 2012 and February 27, 2015, Person A worked in the Financial Planning and Analysis department at Vistaprint.

4. Person B was married to Person A and resided with Person A in Lexington, Massachusetts.

## Background of the Insider Trading Scheme

5. By virtue of Person A's position and responsibilities at Vistaprint, Person A had access to and was responsible for reviewing and analyzing the company's earnings and revenue data and preparing that information for public disclosure. Among other responsibilities, Person A drafted mid-quarter "pulse" reports in advance of Vistaprint's quarterly earnings announcements and reported revenue and earnings information to the company's senior management.

6. Prior to its public release, the revenue and earnings data Person A collected and analyzed was material nonpublic information ("MNPI").

7. Person A had a fiduciary duty to Vistaprint and its shareholders to keep MNPI confidential. Pursuant to Vistaprint's insider trading policy, Person A was prohibited from disclosing MNPI to others who might trade on that information. The policy also prohibited

members of Person A's household from trading in Vistaprint's securities while Person A was in possession of MNPI.

8. Person B was aware of Person A's role at Vistaprint, and the fact that her job involved financial forecasting for the company.

9. As Person A's spouse, Person B also owed a duty of trust and confidence to Person A to keep any MNPI Person A learned from Person B confidential and not to share the MNPI with others.

10. CHEN and his family had a close personal relationship as friends with Person A and Person B and their family. Their children attended the same language school on Sundays, and the two families socialized together and even vacationed together, including trips to Hawaii and Europe. CHEN and Person B were particularly close, speaking together frequently, both in person and over the telephone.

11. Among other things, CHEN and Person B discussed investments in real estate and the stock market, including investments in technology stocks.

## Options Trading

12. An "option" is an investment contract that gives an investor the right to buy or sell shares of a particular stock at a specified price (the "strike price") up until a specific expiration date. The buyer of a "put" option typically anticipates that the price of the underlying security will decrease. Conversely, the buyer of a "call" option typically anticipates that the price of the underlying security will increase. If the investor does not "exercise" or sell the option prior to

the expiration date, the option expires as worthless. Options are "securities" under the Exchange Act.

13. Options can be risky investments, and are therefore typically used only by sophisticated investors. However, investors can generate significant profits from options if they can correctly predict a change in a company's stock price.

14. Several factors can affect the risk and cost of an option including: (a) the length of the option's term; (b) the volatility of the underlying stock; and (c) the "strike price" of the option in relation to the current market price of the underlying shares.

## The Insider Trading Scheme

15. In or about and between July 2012 and August 2014, CHEN obtained MNPI concerning Vistaprint's quarterly financial performance from either Person A, Person B or both.

16. CHEN knew that the MNPI concerning Vistaprint was provided to him in breach of a duty. Specifically, CHEN knew that Person A owed a fiduciary duty to Vistaprint and its shareholders to keep the MNPI confidential, and that Person B similarly owed a duty of trust and confidence to Person A.

17. Thereafter, while in knowing possession of the MNPI, CHEN traded in Vistaprint's securities in an effort to earn profits based on the subsequent public disclosure of that information.

### CHEN's Trades in VPRT and its Options

18. Over eight financial quarters, starting in Vistaprint's fourth fiscal quarter of 2012 and continuing through the fourth fiscal quarter of 2014, CHEN purchased short term call or put options on VPRT shares prior to Vistaprint's quarterly earnings announcements. In each of those quarters, CHEN's purchases correctly anticipated the direction of the change in VPRT's stock price following the earnings announcements. Thus, in quarters in which CHEN purchased call options—essentially, betting that the stock price would rise—Vistaprint reported financial results that prompted its share price to increase. In quarters in which CHEN purchased put options—betting that the stock price would fall—Vistaprint reported financial results that prompted its share price to decrease. After each of those quarters, CHEN generally sold his options, thereby closing out his positions.

19. For example, on or about and between April 8, 2013 and April 15, 2013, prior to the conclusion of Vistaprint's third fiscal quarter, which ended on April 25, 2013, CHEN purchased 345 VPRT call options with a strike price of $37.50, and an expiration date of May 18, 2013, at a price of between $1.80 and $2.70 per option, or a total cost of approximately $78,485.

20. After the stock market closed on April 25, 2013, VPRT announced quarterly earnings that exceeded market expectations. Prior to the earnings announcement, Vistaprint's shares closed at $40.88. The next day, the company's stock price closed at $42.39 per share, an increase of approximately 3.6 percent. On or about the same day, CHEN exercised his options and realized a gain of more than $53,000.

21. On two occasions, CHEN correctly predicted the direction of the change in the share's price, but not the magnitude of the change, and therefore lost money. For example, prior to the conclusion of the first quarter of 2014, which ended on October 29, 2013, CHEN purchased 280 put options on VPRT at a price of between $2.45 and $3.20 per option, with a strike price of $55 and an expiration date of November 16, 2013. After the stock market closed on October 29, 2013, VPRT announced quarterly earnings that fell short of market expectations, prompting its share price to decrease by approximately 2.6%. The price decrease was not enough to make CHEN's bet profitable, even though he correctly predicted the direction of the stock's movement, causing CHEN to realize a loss of approximately $2,275.

22. Similarly, prior to the conclusion of the second quarter of 2014, which ended on January 29, 2014, CHEN purchased 535 call options on VPRT at a price of between $0.80 and $2.85 per option, with a strike price of $52.50. After the company announced better-than-expected earnings, the price of its shares increased 5.2%, but the price increase was not sufficiently large to make CHEN's bet profitable, causing him to realize a loss of approximately $76,872.

23. CHEN's most significant trades in VPRT occurred during the final two quarters of 2014. As a result of those trades, which correctly predicted the direction of the change in VPRT's share price following the company's earnings announcements, CHEN realized gains of more than $800,000.

24. For example, on or about and between March 26, 2014 and April 29, 2014 (the third quarter of 2014), CHEN purchased at least 683 VPRT put options with a strike price of

$47.50, expiring May 17, 2014. At the time of the purchases, VPRT shares were trading at a closing price of between $47.58 and $53.42. The cost of the options was between $0.95 and $2.50 per option, or approximately $105,537 in total, which amounted to more than half the funds CHEN and his spouse had available in their TDA accounts.

25. After the stock market closed on April 29, 2014, Vistaprint announced that its year-over-year revenue had declined for the first time in 14 years. The next day, the price of VPRT shares declined to $39.47 per share, a decrease of approximately 26 percent. The same day, CHEN sold all 683 put options and realized a profit of more than $372,000. CHEN subsequently used a portion of the proceeds to purchase a condominium in Stoneham, Massachusetts for approximately $151,634 in cash.

26. On or about and between July 10, 2014 and July 30, 2014 (the fourth quarter of 2014), CHEN purchased 475 VPRT call options with a strike price of $37.50, at a cost of between $2.00 and $2.45 per option, and 375 call options with a strike price of $40, at a cost of between $1.00 and $1.30 per option, with both sets of options expiring on August 16, 2014. CHEN purchased most of the options on July 30, 2014, just before Vistaprint's earnings announcement later that day. CHEN also purchased approximately 2,000 shares of VPRT stock that same day at a price of between $37.75 and $38.25 per share.

27. After the markets closed on or about July 30, 2014, Vistaprint announced that its fourth quarter revenues and profitability had improved meaningfully as compared to the prior quarter.

28. The following day, the price of VPRT shares increased to $49.26, an increase of approximately 30 percent. The same day, CHEN exercised his options and sold the 2,000 shares of VPRT stock he had purchased the previous day, realizing gains of more than $445,000.

29. Person A resigned from Vistaprint on or about February 27, 2015. Thereafter, CHEN had no profitable options trades in the company's shares.

### The FINRA Letter

30. In or about January 2015, the Financial Industry Regulatory Authority ("FINRA") sent Vistaprint a letter indicating that its' Office of Fraud Detection and Market Intelligence was conducting a review of trading in the company's stock following the company's fourth quarter 2014 earnings announcement. FINRA requested that any Vistaprint employees who may have known details of the company's financial results prior to the public announcement, including Person A, indicate, among other things, whether they knew any of the individuals on a list FINRA provided, and if so, how they knew those individuals, the nature and history of the relationship, and "a statement as to the circumstances under which any knowledge of the company's business activities may have been gained by the individual." The list of individuals included CHEN and his spouse.

31. The list was forwarded to Person A on or about January 22, 2015, with a directive to respond by January 29, 2015.

32. Person A did not respond to this inquiry and acknowledge that she knew CHEN and his spouse, even though they were her close personal friends.

## CHEN's False Statements to the FBI

33.   On or about March 30, 2016, CHEN told Special Agents of the Federal Bureau of Investigation ("FBI") that he was unfamiliar with Person B, and subsequently told them, falsely, that Person B was more of an acquaintance than a friend, that they did not talk often, and that they never talked about VPRT.

34.   CHEN also falsely told Special Agents of the FBI that he did not specifically recall his options trading in VPRT, even though he had realized a gain of more than $800,000 from those trades, and had used a portion of the proceeds to purchase a condominium.

## COUNT ONE
## (Securities Fraud)

35. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

36. In or about and between April 8, 2013 and April 26, 2013, in the District of Massachusetts and elsewhere, the defendant,

**CHARLIE JINAN CHEN,**
also known as "Charlie Chen,"

did knowingly and willfully, by the use of any means and instrumentalities of interstate commerce, the mails, and the facilities of any national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities registered on a national securities exchange, to wit, options in VPRT, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting material facts necessary in order to make the statements, in light of circumstances under which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit upon any person in connection with the purchase and sale of securities, specifically by trading in VPRT securities while in knowing possession of material, non-public information about VPRT's quarterly earnings and revenues.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

10

## COUNT TWO
### (Securities Fraud)

37. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

38. In or about and between March 31, 2014 and April 30, 2014, in the District of Massachusetts and elsewhere, the defendant,

**CHARLIE JINAN CHEN,**
**also known as "Charlie Chen,"**

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly or indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities registered on a national securities exchange, to wit, options in VPRT, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omit to state material facts necessary in order to make the statements, in light of circumstances under which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, specifically by trading in VPRT securities while in knowing possession of material, non-public information about VPRT's quarterly earnings and revenues.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

## COUNT THREE
(Securities Fraud)

39. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

40. In or about and between July 10, 2014 and July 31, 2014, in the District of Massachusetts and elsewhere, the defendant,

**CHARLIE JINAN CHEN,
also known as "Charlie Chen,"**

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly or indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities registered on a national securities exchange, to wit, shares and options in VPRT, in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omit to state material facts necessary in order to make the statements, in light of circumstances under which they were made, not misleading, and (c) engaging in acts, practices and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, specifically by trading in VPRT securities while in knowing possession of material, non-public information about VPRT's quarterly earnings and revenues.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

## COUNT FOUR
(Making a Material False Statement)

41. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 34 of this Indictment and further charges that:

42. On or about March 30, 2016, in the District of Massachusetts and elsewhere, the defendant,

**CHARLIE JINAN CHEN,**
**also known as "Charlie Chen,"**

did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States by stating to Special Agents of the Federal Bureau of Investigation that he could not recall his options trading in VPRT, when in fact CHEN then and there knew he had bought and sold options in VPRT as part of the insider trading scheme alleged herein.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## SECURITIES FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

44. The Grand Jury further finds probable cause to believe that:

45. Upon conviction of one or more of the offenses in violation of Title 15, United States Code, Sections 78j(b) & 78ff(a), set forth in Counts One through Three of this Indictment, the defendant,

**CHARLIE JINAN CHEN,
also known as "Charlie Chen,"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of such offenses. The property to be forfeited includes, but is not limited to, the following:

    (a) The real property located at 157 Franklin Street, Unit 1C-3, Stoneham, Massachusetts.

46. If any of the property described in Paragraph 44, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission by the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendants up to the value of the property described in Paragraph 44 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Neil J. Gallagher, Jr.
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; April 3, 2018

Returned into the District Court by the Grand Jurors and filed.

Kellyann Moore
DEPUTY CLERK   4/3/18 @ 3:05pm