UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18 CR 10083 DJC |
| | ) | |
| CHARLIE JINAN CHEN, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CHARLIE CHEN'S MOTION FOR
## JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c) OR
## MOTION FOR NEW TRIAL ON COUNT FOUR PURSUANT TO FED. R. CRIM. P. 33

Now comes the defendant Charlie Chen, by and through undersigned counsel, and hereby respectfully moves this Honorable Court to set aside the jury verdict and enter a judgment of acquittal on Count Four of the Indictment pursuant to Fed. R. Crim. P. 29(c) and/or in the alternative to order a New Trial on Count Four pursuant to Fed. R. Crim. P. 33. Count Four of the Indictment charged Chen with making a material misstatement to the FBI in a pre-Indictment surprise interrogation on March 30, 2016. Following a trial on all four counts in the Indictment (the first three charged Chen with insider trading), the jury acquitted Chen on Counts One through 3 but convicted him on Count Four.[1]

## I.      BACKGROUND

Mr. Chen was charged by Indictment with three counts of insider trading in Vistaprint securities and one count of making a material false statement to the FBI in a pre-Indictment unscheduled interrogation in which Mr. Chen was not represented by counsel. Mr. Chen was found not guilty on Counts One through Three charging him with securities fraud by obtaining confidential material non-public information from a Vistaprint insider and trading on the basis of

---

[1] Prior to commencement of trial, the government informed the Court it was not pursuing its charge of aiding and abetting. Therefore, there were no jury instructions or verdict form concerning aiding and abetting and we treat that charge as having been waived or dismissed with prejudice.

that information. However, he was convicted under 18 U.S.C. § 1001(a)(2) in Count Four of making a material false statement to the FBI.

The Indictment on Count Four charged that on March 30, 2016 Mr. Chen told the FBI that he "could not recall his options trading in VPRT when in fact CHEN then and there knew he had bought and sold options *as part of an insider trading scheme alleged herein*." (Italics added) (the "Options Statement"). After a jury trial, Chen was found Not Guilty on the insider trading charges and therefore there was no finding of "an insider trading scheme…." Because Count Four explicitly links Mr. Chen's Options Statement to an insider trading scheme, he could not be found guilty on Count Four if there was no insider trading scheme.

Further, the government unequivocally confirmed that Count Four relates to the Options Statement. At the Final Pre Trial Conference ("FPTC") the government represented that "[g]oing back to my sister's point about Count Four, Count Four does not charge a misstatement with respect to 'he does not know them.' Count Four specifically is the statement "I don't recall my trading in Vistaprint options."[2] See p. 32 of the transcript of the FPTC attached hereto as Exhibit A. By the government's own admission, on which Mr. Chen was entitled to rely, Count Four revolves around the Options Statement only.

Notwithstanding the explicit confirmation about Count Four, the government in its opening statement told the jury that Count Four related Mr. Chen's alleged statement denying a close friendship with Kevin Xu (the "Xu Statement") and did not at any point during its opening inform the Jury that Count Four related to the Options Statement. See transcript of the government's opening statement to the jury at pp.11 and 12 attached hereto as Exhibit B.[3] As

---

[2] The government's reference to "them" means Kevin Xu and Zhen Ye.

[3] "so one day a little bit before the lunch crowd arrived the FBI went to Charlie Chen's restaurant -- and asked Charlie about his trades. Among other things, Charlie denied knowing Kevin and then said that they were not close friends, not close friends." See p. 12 of Exhibit B.

such, the government created confusion at trial about the subject of Count Four in an apparent contradiction of its prior representation at the PTC.

In its closing statement, the government continued to muddy the waters on the contours of Count Four.  Not once did it recite the language from or subject matter of Count Four the Indictment limiting the false statement to the Options Statement.  Instead, it generally repeated that Mr. Chen lied to the FBI about insider trading.

In the interview of Mr. Chen by the FBI on March 30, 2016, the agent unambiguously reported in his 302 Report that Mr. Chen told him he "is familiar with VISTAPRINT. CHEN has followed the company for many years. CHEN noted that VISTAPRINT had a 10-15 gap on earnings and that is why he traded in options on VISTAPRINT. CHEN stated that, based on a 20 year chart, there were a lot of ups and downs with the VISTAPRINT stock, so there was a big gap in which to trade options." See p. 1 of 3 in the FBI 302 Report attached hereto as Exhibit C. Later in the interview there was follow up about whether Mr. Chen recalled *specific* options trades and the agent wrote in the 302 Report that "CHEN does not *specifically* recall his options trading in VISTAPRINT." See p. 2 of 3 Exhibit C. The government in framing Count Four of the Indictment took that language from the 302 omitted the word "specifically" but added "as part of an insider trading scheme alleged herein."  See Count Four of the Indictment.

Unequivocally, in the early part of the interview Mr. Chen told the agent he traded Vistaprint options. His statement was truthful. The government challenged the assertion that Mr. Chen could not recall a *specific* options trade "as part of an insider trading scheme."  In light of the jury's acquittal on all the insider trading charges, Mr. Chen's later statement was also true. Further, Mr Chen's acknowledgement that he, in fact, traded Vistaprint options was the material statement for purposes of the investigation.

3

At the close of the Government's case-in-chief and again at the end of the close of evidence, Mr. Chen moved for a Rule 29 judgment of acquittal on Count Four.  The Court denied Mr. Chen's motion.

## II.      RULE 29(C)

### A.  STANDARD FOR GRANTING A JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29(c)(2).

Chen brings this motion pursuant to Rule 29(c)(2) which provides as follows:

> (c) AFTER JURY VERDICT OR DISCHARGE.
>
> (2) *Ruling on the Motion.* If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

A "judgment for acquittal ... is an important safeguard to the defendant. It tests the sufficiency of the evidence against him, and avoids the risk that a jury may capriciously find him guilty though there is no legally sufficient evidence of his guilt." *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir. 1993) (internal citations and quotations omitted). .  The confusion created by the government in its opening and closing statements to the jury at Mr. Chen's trial about the specific subject matter and boundaries of Count Four may have led to incorrect verdict. A judgment of acquittal by this Court is the important safeguard to Mr. Chen.

"In testing the sufficiency of th[e] evidence on a motion for judgment of acquittal, [this Court] must determine whether there is ***substantial evidence*** from which a jury might fairly conclude guilt beyond a reasonable doubt." *Parker v. United States*, 378 F.2d 641, 644–45 (1st Cir. 1967) (emphasis added). "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *United States v. Krumsiek*, 111 F.2d 74, 78 (1st Cir. 1940). In other words, the Court must decide "whether any rational factfinder could [find] that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt." *United States v. Richard*, 234 F.3d 763, 767 (1st

4

Cir. 2000), *quoting United States v. Gabriele,* 63 F.3d 61, 67 (1st Cir. 1995). "While all inferences must be made in favor of the prosecution, leaps of logic should not be." *Evans-Smith v. Taylor,* 19 F.3d 899, 908 n.22 (4th Cir. 1994). "Where . . . the trier of fact would have . . . to rely on attenuated inferences [to make a finding] . . . the finding . . . cannot stand." *United States v. Hickman*, 626 F.3d 756, 763 (4th Cir. 2010).

## B.  COUNT FOUR MUST BE DISMISSED BY THE COURT.

### (i)    The Judiciary's Concern About Expansion of the False Statement Statute.

This court and others have "repeatedly expressed concern about the potential misuse of the federal false statement statute, recently described by one judge as "the ever metastasizing § 1001." *United States v. Moore,* 612 F.3d 698, 702 (D.C.Cir.2010) (Kavanaugh, J., concurring). Justice Rehnquist noted that the statute has the potential "to criminalize the making of even the most casual false statements so long as they turned out, unbeknownst to their maker, to be material to some federal agency function." *Yermian,* 468 U.S. at 82, 104 S.Ct. 2936 (Rehnquist, J., dissenting). In this district, Judge Ponsor voiced the same concern in dismissing a § 1001 case quoting the language from *Moore* and citing legal articles. *Binette v. United States,* 945 F. Supp2d 223 (2013).   The material false statement charge against Mr. Chen is an example of the metastasis of § 1001. Reliance on one of the statements over the other on Chen's Vistaprint options trading underscores the impermissible use of § 1001.

### (ii)    Chen's Statement Was Not Material.

The materiality of a statement under 18 U.S.C. § 1001(a)(2) is a question of law for the court to determine:[4]

[A]lthough the materiality of a statement rests upon a factual evidentiary showing,

---

[4] We examine the evidence in the light most favorable to the Government.

5

the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe [it is proper to treat] the issue of materiality as a legal question.

*Kungys v. United States,* 485 U.S. 759 (1988) citing *United States* v. *Abadi,* 706 F. 2d 178, 180, cert. denied, 464 U. S. 821 (1983).

A statement is material if it "has a natural tendency to influence, or was capable of influencing, the decision of 'the decisionmaking body to which it was addressed.'" *Kungys v. United States,* 485 U.S. 759 (1988) citing *Weinstock* v. *United States, supra,* at 367-368, 231 F. 2d at, 701-702; *United States* v. *Corsino,* 812 F. 2d 26, 30-31 (CA1 1987). This test must be met by evidence that is clear, unequivocal, and convincing. *Kungys v. United States,* 485 U.S. 759 (1988) citing *Schneiderman* v. *United States,* 320 U. S. 118, 158 (1943).  The First Circuit interprets the *Kungys* test by holding that "the proper inquiry is not whether the tendency to influence bears upon a particular aspect of the investigation but, rather, whether it would bear upon the investigation in the abstract or in the normal course." Mehanna United States v. Mehanna, 735 F.3d 32 (1st Cir. 2014), cert. denied, —— U.S. ——, 135 S.Ct. 49, 190 L.Ed.2d 29 (2014).

In this case, Mr. Chen's later statement that he did not specifically recall options trading could not meet the *Kungys* or *Mehanna* test for materiality by clear, unequivocal, and convincing evidence. The FBI, in its own words, admits that Mr. Chen said in the March 30th interview that he traded in Vistaprint options. See p. 1 of the 302 Report. It did not challenge the veracity of that statement. It was later in that same interview that he could not recall specific trades as part of an insider trading scheme. The FBI chose to treat the later statement that he couldn't specifically recall his Vistaprint options trading as materially false. Taking the two statements together, on their face, demonstrates that Chen admitted to trading Vistaprint options.  Not recalling the dates of each of those trades, the purchase amount of each of those trades, the types

6

of options he purchased on each occasion is what is implicit in the question of what Chen *specifically* recalled. The details of them could be ascertained by the brokerage account statements already in the possession of the FBI prior to the interview of Chen. Given the unquestionable fact that the FBI was conducting an insider trading investigation of Vistaprint securities, it is more likely than not that the more important disclosure by Chen in the interview was the admission he traded in Vistaprint options. That admission does not eviscerate the other statement about his recall of the details. Thus, under such circumstances, Chen's later statement could not have had a natural tendency to influence the FBI in reality or in the abstract.

The government did not produce clear, unequivocal and convincing evidence at trial that the later statement by Mr. Chen trumped, eviscerated, overrode, or altered his earlier acknowledgement of trading in Vistaprint options and, of course it could not. The two statements by Chen should be read in tandem and not in isolation. Selecting the latter statement over the first statement distorts and misinterprets the interview as a whole on the issue of whether Chen traded in Vistaprint options. The two statements taken together could not have had a natural tendency to influence the FBI in moving forward with its insider trading investigation. In fact, the first statement to the FBI by Mr. Chen was a major piece of the puzzle in the chain of the investigation into whether Mr. Chen traded Vistaprint options as part of an insider trading scheme.

The government chose to cherry pick one statement by Mr. Chen over another even though both statements were interdependent and not mutually exclusive. By doing so, it ignored the complete set of facts. A disbelieved truth perverts an investigation and, here, the FBI clearly ignored the more material of Chen's two statements, namely that Chen traded in Vistaprint options. A function of law enforcement is "the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of a crime." See *Brogan*

7

*v. United States,* 522 U.S. 398 (1988).  A charge under §1001(a)(2) under the totality of facts was the manufacture of a crime by the FBI and this Court should issue a verdict of acquittal on Count Four.

The specific language in the Indictment links the later statement by Mr. Chen to trading Vistaprint options "as part of an insider trading scheme."   Analyzing the materiality of Mr. Chen's later statement in light of the jury's acquittal of Mr. Chen on the three insider trading charges, yields the inalterable conclusion that he did not trade Vistaprint options on inside information.  The government did not submit clear, unequivocal, and convincing evidence that Mr. Chen's unambiguous acknowledgement that he traded Vistaprint options but could not recall specific trades was material.

### (iii)    Chen Did Not Act with Knowledge that His Statement Was Unlawful or that He Willfully Lied to the FBI.

The Supreme Court has made clear that "in order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.' " *Bryan v. United States,* 524 U.S. 184, 191–92, 118 S.Ct. 1939, 141L.Ed.2d 197 (quoting *Ratzlaf v. United States*, 510 U.S.135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). Section 1001 only applies to those who "knowingly and willfully" lie to the Government. It seems likely that "individuals acting innocently and in good faith, will not be deterred from voluntarily giving information or making complaints to the F. B. I." *United States* v. *Adler, supra,* at 922. See also *United States* v. *Lambert,* 501 F. 2d, at 946; *Friedman* v. *United States, supra,* at 377 (Register, J., dissenting).

In determining whether Mr. Chen acted with knowledge that his later statement was unlawful in view of his acknowledgement of trading in Vistaprint options, it is incongruous, to say the least, that only one of his statements on the subject of Vistaprint trades is untruthful but the other is not. The government apparently had no problem with the truthfulness of the

statement that Chen traded in Vistaprint options, evidenced by a failure to allege it in the Indictment and the fact that the jury acquitted Mr. Chen of insider trading undercuts the notion that he acted with knowledge of the falsity of his later statement that he could not specifically recall trades as part of an insider trading scheme. Both statements were true in light of the acquittal on the insider trading charges.

If Mr. Chen sought to deflect the FBI's investigation, logic dictates that he would not have told the FBI that he bought and sold Vistaprint options.  Because he knew he did not trade in those options on inside information, his later statement was also not an attempt to mislead the FBI or obscure its investigation.  The fact that the jury found him not guilty of insider trading underscores the lack of evidence on the issue of Mr. Chen's knowledge that his later statement was unlawful.

### III.   **CONCLUSION**

Based on the foregoing, this Honorable Court should enter a judgment of acquittal on Count Four of the Indictment or in the alternative order a new trial on Count Four.

CHARLIE JINAN CHEN
By his attorneys,

*/s/ Dennis C. Carter*
Valerie S. Carter, BBO No. 545412
Dennis C. Carter, BBO No. 670187
CARTER & DOYLE LLP
110 Cedar Street, Suite 250
Wellesley Hills, MA 02481
781.235.4400
vcarter@carterdoyle.com
DATED:  April 11, 2019                    dcarter@carterdoyle.com

## CERTIFICATE OF SERVICE

I certify that, on April 11, 2019, this document filed through the ECF system was sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ Dennis C. Carter_____
Dennis C. Carter, Esquire